# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 24-80148-CIV-ALTONAGA

**TYRELL A. DERONVILLE**,

       Petitioner,

v.

**WARDEN, FLORIDA**
**STATE PRISON**,

       Respondent.

_____/

## <u>ORDER</u>

**THIS CAUSE** came before the Court on Petitioner, Tyrell A. Deronville's Petition Under 28 U.S.C. [Section] 2254 for Writ of Habeas Corpus by a Person in State Custody [ECF No. 1]. Attached to the Petition is an "Exhibit" that the Court construes as a memorandum of law [ECF No. 1-1]. Petitioner challenges the constitutionality of his state conviction and sentence in case number 2013-CF-011618, entered in the Fifteenth Judicial Circuit Court in and for Palm Beach County, Florida. (*See generally* Pet.). Respondent filed a Response [ECF No. 16]; an Appendix to the Response with an Index [ECF No. 17] and accompanying Exhibits 1–27 [ECF Nos. 17-1–17-10]; and a Notice of Filing Transcripts [ECF No. 18] with accompanying transcripts [ECF Nos. 18-1–18-3]. Petitioner thereafter filed an untimely Reply [ECF No. 21]. (*See* Feb. 10, 2024 Order [ECF No. 5] ¶ 14 (setting deadline for Petitioner's reply)).

The Court has carefully considered the parties' written submissions, the record, and applicable law. For the following reasons, the Petition is dismissed in part on procedural grounds and denied in part on the merits.

## I. BACKGROUND

On November 21, 2013, Petitioner was charged by Indictment with one count of first-degree murder with a firearm (Count 1), one count of attempted first-degree murder with a firearm (Count 2), and one count of being a felon in possession of a firearm and ammunition. (*See* App., Ex. 1, First Composite [ECF No. 17-1] 272–73).[1]   The State accused Petitioner of shooting two victims — one of whom was mortally wounded — over a dispute involving $40 worth of crack cocaine. (*See id.* 275).

Petitioner's competence was a significant issue pretrial.   Petitioner was found to have a long history of severe mental illness; had threatened suicide; and was found not guilty by reason of insanity in an unrelated case several months before the Indictment. (*See* App., Ex. 2, Second Composite [ECF No. 17-2] 34–39).   On July 7, 2015, Petitioner made a request under *Faretta v. California*, 422 U.S. 806 (1975), to discharge counsel and represent himself. (*See id.* 34).   After holding a *Faretta* hearing, the trial court concluded that Petitioner understood the "perils" of self-representation but also found that, based on Petitioner's well-documented medical history, he would "act out violently and aggressively if confronted with stress related to trial, including trial procedure." (*Id.* 37–39).   The trial court was careful to clarify, however, that Petitioner "has always been found competent to proceed to trial," even though "he suffers from a major mental illness which prevents him from waiving his Sixth Amendment right to counsel and representing himself at trial." (*Id.* 39).

On August 31, 2016, a Palm Beach County jury found Petitioner guilty of second-degree murder, a lesser-included offense of Count 1; and attempted second-degree murder, a lesser-

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.   Citations to transcript testimony rely on the pagination and line numbering in the original document.

CASE NO. 24-80148-CIV-ALTONAGA

included offense of Count 2.  (*See* Second Composite 100–02).  The State *nolle prossed* Count 3 of the Indictment on December 2, 2016.  (*See* App., Fourth Composite [ECF No. 17-4] 44).  The state trial court adjudicated Petitioner guilty and sentenced him to life in prison on Count 1 and a consecutive 30-year term of imprisonment on Count 2.  (*See* Second Composite 204–10).

Petitioner appealed his conviction and sentence to Florida's Fourth District Court of Appeal (the "Fourth DCA").  He raised four arguments on direct appeal: that (1) a motion to suppress "should have granted due to the fact that the search warrants were insufficient [o]n their face"; (2) there was insufficient evidence to convict Petitioner; (3) the trial court erred in failing to grant a motion for a judgment of acquittal because "the testimony and evidence presented at the trial did not support [Petitioner's] convictions"; and (4) the trial court erred by not finding "mitigating circumstances to support a downward departure" when sentencing Petitioner.  (First Composite 28 (alteration added)).  On October 4, 2018, the Fourth DCA summarily affirmed the trial court in an unwritten, per curiam opinion.  *See Deronville v. State*, 254 So. 3d 959 (Fla. 4th DCA 2018).

On May 6, 2019,[2] Petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (*See generally* First Composite 99–119).  Petitioner amended his Rule 3.850 motion three times;[3] his final, operative Rule 3.850 Motion (filed on April 23, 2020) raised seven grounds for relief, each premised on ineffective assistance of counsel. According to Petitioner, his counsel was ineffective for failing to: (1) "object to the admission of the interrogation room video" because the recorded interrogation occurred "immediately after a

---

[2] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing."  *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (citations omitted).

[3] (*See generally* First Composite 121–43; *id.* 145–81).

traumatic incident/assault, causing the defendant to respond to the questions under duress" (First Composite 187); (2) investigate an incident where a United States Marshal allegedly grabbed Petitioner's groin (*see id.* 193); (3) seek a downward departure based on Petitioner's mental health (*see id.* 201); (4) file a motion to suppress because there was allegedly no valid search warrant for a search that resulted in evidence used against him (*see id.* 211); (5) challenge, impeach, or suppress the identification of Petitioner by a witness (*see id.* 215); (6) object to the prosecutor's statement during closing argument that Petitioner "is a stone cold killer" (*id.* 221); or (7) "present a diminish[ed] capacity defense" at trial (*id.* 225–26 (alteration added)).

The State filed a Response to Petitioner's Final Amended Rule 3.850 Motion, arguing that Petitioner's claims should be summarily denied without an evidentiary hearing. (*See* First Composite 246–70). On March 11, 2022, the state postconviction court "adopt[ed] the facts, legal analyses, and conclusions of law contained in the State's Response as its own," and denied the Final Amended Rule 3.850 Motion for the reasons enumerated in the State's Response. (App., Ex. 3, Third Composite [ECF No. 17-3] 88 (alteration added)).

Petitioner appealed the state postconviction court's decision to the Fourth DCA, arguing that the lower court erred in denying all his grounds for relief. (*See id.* 97–98). The Fourth DCA summarily affirmed the state postconviction court in an unwritten, per curiam decision on October 6, 2022. *See Deronville v. State*, 350 So. 3d 738 (Fla. 4th DCA 2022). Petitioner filed a motion for rehearing (*see* Third Composite 161–62), which the Fourth DCA denied on November 17, 2022 (*see id.* 165). The Fourth DCA's mandate issued on December 9, 2022. (*See id.* 167).

On October 31, 2022, Petitioner filed his first Motion for Correction of Illegal Sentence under Florida Rule of Criminal Procedure 3.800(a). (*See generally id.* 169–202). Petitioner argued that his sentence was illegal because: (1) the sentencing court considered "impermissible factors"

(*id.* 176); (2) the sentencing court violated the Florida Supreme Court's decision in *Williams v. State*, 186 So. 3d 989 (Fla. 2016), by imposing consecutive sentences (*see id.* 185); and (3) Petitioner was sentenced "under an illegal indictment" (*id.* 186). The state postconviction court denied the Motion on April 13, 2023. (*See id.* 232). Petitioner appealed, and the Fourth DCA summarily affirmed in an unwritten, per curiam decision. *See Deronville v. State*, 372 So. 3d 264 (Fla. 4th DCA 2023). The Fourth DCA's mandate issued on November 3, 2023. (*See* Fourth Composite 24).

Petitioner filed a second Rule 3.800(a) motion on October 19, 2023. (*See generally id.* 26–36). Petitioner claimed that his life sentence on Count 1 for second-degree murder exceeded the statutory maximum. (*See id.* 31). The state postconviction court denied the motion on November 16, 2023. (*See id.* 41). According to Respondent, Petitioner's appeal of this decision is pending before the Fourth DCA. (*See* Resp. 10).

Petitioner filed this Petition on February 5, 2024.[4] (*See* Pet. 1). Petitioner raises nine grounds for relief, all focused on ineffective assistance of counsel. According to Petitioner, his counsel was ineffective for failing to: (1) file a sufficient "motion to suppress search warrants" (Mem. 2); (2) file a motion to suppress the "video statement" Petitioner made "immediately after a traumatic incident/assault" (*id.* 18); (3) "file [a] motion to dismiss [a] fatally defective indictment" (*id.* 23 (alterations added)); (4) offer the correct manslaughter jury instruction during closing argument or "object [to] the recording of the verdict rendered by the jury" (*id.* 30 (alteration added)); (5) depose, cross-examine, or suppress evidence from a witness (*see id.* 35); (6) file a motion under Florida Rule of Criminal Procedure 3.800(b)(2) challenging his sentence (*see id.*

---

[4] Respondent does not contest the Petition's timeliness. (*See* Resp. 10). The Court presumes, therefore, that the Petition is timely. *See Day v. McDonough*, 547 U.S. 198, 202 (2006) ("Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto." (citing Fed. R. Civ. P. 8(c), 12(b), and 15(a)).

37); (7) "object [to] prosecutor[] misconduct" or "preserve the constitutional[ly] impermissible factors issue for appellate review" (*id.* 38 (alterations added)); (8) "object [to] erroneous[] and vague jury instructions" (*id.* 41 (alterations added)); or (9) "pursue [an] insanity defense and seek [a] sanity evaluation" (*id.* 44 (alterations added)).

## II.  LEGAL STANDARDS

### A.  <u>Deference under Section 2254</u>

A court's review of a state prisoner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  *See Abdul–Kabir v. Quarterman*, 550 U.S. 233, 246 (2007).  "The purpose of [the] AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction."  *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016) (alteration added; quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)).  This standard is "difficult to meet."  *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citation omitted).

Under the AEDPA, a federal court may not grant a habeas petitioner relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1)–(2) (alteration added).

A state court decision is contrary to established Supreme Court precedent when it (1) applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) confronts a set of facts materially indistinguishable from a decision of the Supreme Court and

nevertheless arrives at a result different from Supreme Court precedent.  *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).  An "*unreasonable* application of [clearly established] federal law is different from an *incorrect* application of federal law."  *Id.* at 410 (emphasis in original; alteration added).  Consequently, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (alteration added; citation omitted).  If the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."  *Wilson v. Sellers*, 584 U.S. 122, 125 (2018).

This is "a highly deferential standard for evaluating state-court rulings" which "demands that state-court decisions be given the benefit of the doubt[.]"  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (alteration added; quotation marks, citations, and footnote call number omitted).  Deferential review under section 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits.  *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

Even summary rejection of a claim, without explanation, qualifies as an adjudication on the merits, warranting deference.  *See Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1351 (11th Cir. 2019).  If the state court's merits determination is unaccompanied by an explanation, federal courts should "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning."  *Wilson*, 584 U.S. at 125.  Finally, a decision is still an adjudication on the merits when it "addresses some but not all of a defendant's claims."  *Johnson v. Williams*, 568 U.S. 289, 298 (2013).

**B.**     **Harmless Error**

In addition to the requirements imposed by the AEDPA, when a state court has ruled on the merits of a state prisoner's claim, a federal court cannot grant relief unless the petitioner also demonstrates that any error made by the state trial court had a "'substantial and injurious effect or influence'" in determining the jury's verdict. *Brown v. Davenport*, 596 U.S. 118, 126 (2022) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). To accomplish that, a petitioner must persuade a federal court that he suffered "actual prejudice" from the alleged error.

"Actual prejudice" requires a petitioner to show that "a federal habeas court itself harbors grave doubt about the petitioner's verdict" based on the "whole body of law" — without being limited to Supreme Court precedents as of the time the state court renders its decision, as is the case under the AEDPA. *Davenport*, 596 U.S. at 135–136 (emphasis omitted). In short, a "federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or [the] AEDPA. But to *grant* relief, a court must find that the petitioner has cleared both tests." *Id.* at 134 (alterations added; emphases in original); *see also Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012) ("[A] habeas petition cannot be successful unless it satisfies both [the] AEDPA[] and *Brecht*." (alterations added)).

**C.**     **Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to assistance of counsel during criminal proceedings against them. *See Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). This includes not just the right to the presence of counsel, but also "the right to the effective assistance of counsel." *Id.* at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

When assessing counsel's performance under *Strickland*, the Court employs a strong

presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 24 (2013) (alterations added; citation omitted). "Where the highly deferential standards mandated by *Strickland* and [the] AEDPA both apply, they combine to produce a doubly deferential form of review that asks only 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013) (alteration added; quoting *Harrington*, 562 U.S. at 105).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate: (1) his counsel's performance was deficient, falling below an objective standard of reasonableness; and (2) he suffered prejudice resulting from that deficiency. *See Strickland*, 466 U.S. at 687–88. To establish deficient performance, a petitioner must show that, considering all circumstances, "counsel's conduct fell 'outside the wide range of professionally competent assistance.'" *Cummings v. Sec'y for Dep't of Corrs.*, 588 F.3d 1331, 1356 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690–91 (alterations added).

A court's review of counsel's performance should "only" focus on "what is constitutionally compelled" and not merely "what is possible or 'what is prudent or appropriate[.]'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (alteration added; footnote call number omitted; quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). Counsel is not ineffective for failing to raise non-meritorious issues, *see Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (citation omitted); nor is counsel required to present every non-frivolous argument, *see Dell*

*v. United States*, 710 F.3d 1267, 1281 (11th Cir. 2013) (citation omitted).

To satisfy *Strickland*'s prejudice prong, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 (alterations added). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *See id.* at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013) (citations omitted).

### III. DISCUSSION

The Court first determines whether Petitioner's claims are exhausted; next, whether his claims can be brought under the limited exception announced in *Martinez v. Ryan*, 566 U.S. 1 (2012); and then the merits of Petitioner's exhausted claims and his entitlement to an evidentiary hearing and a certificate of appealability.

### A.   Exhaustion and Procedural Default

Before seeking a federal writ of habeas corpus, "a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby [allowing] the State . . . to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (alterations added; quotation marks and citations omitted). "To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (citations and quotation marks omitted). This requirement — acting together with the requirements of section 2254(d) — was designed "to ensure that state proceedings are the central process [for asserting constitutional challenges to state

convictions], not just a preliminary step for a later federal habeas proceeding[.]" *Harrington*, 562 U.S. at 103 (alterations added; citing *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977)). Consequently, if a claim raised in a section 2254 petition is unexhausted, the claim is barred from consideration and must be dismissed. *See Brown v. Dixon*, 591 F. Supp. 3d 1251, 1265 (S.D. Fla. 2022), *certificate of appealability denied sub nom. Brown v. Dep't of Corr.*, No. 22-11344, 2023 WL 3064699 (11th Cir. Feb. 17, 2023).

Petitioner concedes that all nine grounds for relief in the Petition have "not already been presented" but argues that the Court should still consider his claims on the merits based on the exception established in *Martinez* and *Trevino v. Thaler*, 569 U.S. 413 (2013). (*See* Pet. 25). Respondent asserts that "the equitable exception created in *Martinez*" does not apply. (Resp. 12). After reviewing the state-court record and Petitioner's filings, the Court finds that — although Respondent is correct that most of Petitioner's grounds for relief are unexhausted — Grounds One and Two have been fully exhausted. The Court explains.

***Grounds One and Two***. "Exhaustion has two essential requirements relevant to this case." *Johnson v. Florida*, 32 F.4th 1092, 1096 (11th Cir. 2022) (alteration added). First, the habeas petitioner must have "fairly presented" in state court the same claim he or she raises in a federal habeas petition. *Id.* (quoting *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005)). "To do that, a state-court prisoner must present his claim to the state court in a manner that would allow a 'reasonable reader' to understand the legal and factual foundation for each claim." *Id.* (quoting *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344–45 (11th Cir. 2004)). Second, the petitioner must ensure that the claims were brought before "the state's highest court, either on direct appeal or on collateral review." *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010).

Ground One of the Petition is confusingly phrased in the future tense, with Petitioner

arguing that the "trial court would have erred when failing to recognize" that probable cause did not exist for a search warrant that was then executed and resulted in evidence used against him. (Mem. 2). Respondent asks the Court to interpret Ground One as an ineffective-assistance-of-counsel claim since it is "based upon an argument made by the State on direct appeal, i.e., the motion to suppress was properly denied because petitioner presented no specific evidence to question the credibility of the State's witness." (Resp. 13 (citation omitted)).

The Court agrees with this reading. Indeed, Petitioner clarifies later in the Petition that he blames counsel for failing "to properly address the arguments" in his motion to suppress and that counsel should have "oppose[d] the content of the search warrant affidavits[.]" (Mem. 15 (alterations added)). Petitioner further asserts the trial court would have granted the motion to suppress had counsel not filed a "barebone" motion to suppress. (*Id.*). Ground One of the Petition, therefore, is materially identical to "Ground Four" of the Final Amended Rule 3.850 Motion, where Petitioner castigated his defense attorney for filing an insufficient motion to suppress. (First Composite 213).

Importantly, this argument was raised before the Fourth DCA and was rejected. *See Deronville*, 350 So. 3d at 738. Since a "reasonable reader" would find that the factual and legal foundation of Ground One is the same as a claim that was "fairly presented" to the state's highest court, Ground One has been exhausted. *See Johnson*, 32 F.4th at 1096 (quotation marks and citations omitted).[5]

---

[5] The Court recognizes that Ground One of the Petition contains a much more robust argument when compared to "Ground Four" of Petitioner's final Rule 3.850 Motion. (*Compare* Mem. 2–16, *with* First Composite 211–14). But both the Petition and the Rule 3.850 Motion focus on the same discrete claim: that counsel was ineffective for failing to file a motion to suppress arguing that the State lacked probable cause to seek a search warrant because of unreliable witness testimony. (*See id.*). The fact that Petitioner has added more detail in his federal Petition does not mean he transformed the issue into an entirely new, unexhausted claim. *See Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1287 (11th Cir. 2012) ("While his federal petition certainly expanded on the topics raised earlier in state court, we cannot ignore that they

Next, in Ground Two, Petitioner asserts that counsel was ineffective for failing "to move to exclude the entire video statement" Petitioner made because the statement "was taken immediately after a traumatic incident/assault, causing the Petitioner to respond to the questions under duress." (Mem. 18). Petitioner explains that this incident occurred when a U.S. Marshal deliberately grabbed "his private body part area[.]" (*Id.* 19 (alteration added)). This claim is identical to both "Ground One" and "Ground Two" of the Final Amended Rule 3.850 Motion, where Petitioner argued that counsel should have moved to suppress his statement because he "was inappropriately grabbed at his groin" by a Marshal shortly before the interrogation took place. (First Composite 188).

Once again, the substance of Ground Two was fairly presented to and rejected by the Fourth DCA, *see Deronville*, 350 So. 3d at 738, so it has been exhausted for federal habeas review. Since Grounds One and Two of the Petition have been exhausted, the Court reviews these claims on their merits under AEDPA's standard of review.

***The Remaining Grounds***. Grounds Three through Nine of the Petition also raise ineffective-assistance-of-counsel claims. (*See generally* Mem. 23–48). Under Florida law, "ineffective assistance claims [must] generally be raised on collateral review pursuant to Florida Rule of Criminal Procedure 3.850." *Sullivan v. Sec'y, Fla. Dep't of Corr.*, 837 F.3d 1195, 1199 (11th Cir. 2016) (alteration added; citation omitted). Petitioner admits that he did not raise these issues in his Final Amended Rule 3.850 Motion, and, upon review, the Court agrees. (*See generally* First Composite 246–70). Since these grounds were never raised in state-court proceedings, they are unexhausted. *See Kelley*, 377 F.3d at 1343–45.

---

involve the same issues raised [in state court.]" (alteration added)).

**B.     The _Martinez v. Ryan_ Exception**

Where, as here, a habeas petition "contains both exhausted and nonexhausted claims," a district court must generally give the petitioner an opportunity to return to "state court to exhaust his claims[.]"  *Id.* at 1351 (alteration added; quoting *Rose v. Lundy*, 455 U.S. 509, 510 (1982)).  Petitioner can no longer return to state court to exhaust his ineffective-assistance-of-counsel claims because "he already filed a Rule 3.850 motion, [and] he would be barred under state law from filing additional motions raising the federal claim."  *Pearson v. Sec'y, Dep't of Corr.*, 273 F. App'x 847, 851 (11th Cir. 2008) (alteration added).

Under these circumstances, Petitioner's unexhausted claims have been procedurally defaulted and must be dismissed unless he can meet one of two very narrow exceptions to the procedural default rule.  *See Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).  First, "a petitioner may obtain federal review of a procedurally defaulted claim if he can show both 'cause' for the default and actual 'prejudice' resulting from the default."  *Henderson*, 353 F.3d at 892 (citations omitted).  Second, a petitioner can show that there has been a constitutional violation resulting "in the conviction of someone who is actually innocent."  *Id.* (citation omitted).  Since Petitioner does not rely on the "actual innocence" exception, the Court limits its review to the "cause and prejudice" exception.  (*See generally* Pet.; Mem.).

Petitioner relies on two Supreme Court decisions in arguing that he has met the "cause and prejudice" exception because he "was not represented by counsel during postconviction procedure."  (Pet. 25).  In *Martinez*, the Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  566 U.S. at 9 (alteration added).  Subsequently,

in *Trevino*, the Supreme Court expanded the *Martinez* rule to collateral-review proceedings where a petitioner did not previously "have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal[.]"  569 U.S. at 429.

> In other words, *Martinez*'s narrow exception only applies when:
>
> (1) a state requires a prisoner to raise ineffective-trial-counsel claims at the initial-review stage of a state collateral proceeding and precludes those claims during direct appeal; (2) the prisoner did not comply with state rules and failed properly to raise ineffective-trial-counsel claims in his state initial-review collateral proceeding; (3) the prisoner did not have counsel (or his appointed counsel was ineffective by not raising ineffective-trial-counsel claims) in that initial-review collateral proceeding; and (4) failing to excuse the prisoner's procedural default would cause the prisoner to lose a substantial ineffective-trial-counsel claim.

*Arthur v. Thomas*, 739 F.3d 611, 629 (11th Cir. 2014) (footnote call number, quotation marks, and citation omitted).  Further, even if *Martinez* applies, the habeas petitioner must still demonstrate prejudice by showing that the alleged constitutional error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Ward*, 592 F.3d at 1178 (emphasis omitted; quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

Respondent contends that the *Martinez* exception does not apply to any of Petitioner's grounds for relief for two reasons.  Respondent first argues that Petitioner "never requested appointed counsel in his Rule 3.850 proceeding" even though Florida law provided him with that opportunity.  (Resp. 12 (citing *Blackmon v. Pippin*, No. 08-cv-510, 2013 WL 6168889, at *5 (N.D. Fla. Nov. 25, 2013))).  Respondent next asserts that Petitioner's ineffective-assistance-of-counsel claims are not sufficiently "substantial" to warrant *Martinez*'s application.  (*Id.*).  The Court is wary of adopting Respondent's first argument, which other courts in this District have rejected. *See, e.g.*, *Forbes v. Sec'y, Dep't of Corr.*, No. 20-60009-Civ, 2022 WL 17082912, at *8 n.4 (S.D. Fla. Nov. 18, 2022) ("*Martinez* itself doesn't seem to require habeas petitioners to prove that they tried (and failed) to find counsel on collateral review.").

Instead, the Court focuses on Respondent's second argument that Petitioner fails to advance a substantial ineffective-assistance-of-counsel claim.   To show that his claims are substantial, Petitioner must demonstrate that "'jurists of reason would find it debatable'" whether the Petition states a valid ineffective-assistance-of-counsel claim. *Hittson v. GDCP Warden*, 759 F.3d 1210, 1270 (11th Cir. 2014) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   For the following reasons, the Court agrees that none of Petitioner's unexhausted claims is substantial.

***Ground Three.***   In Ground Three, Petitioner asserts that trial counsel was ineffective for failing to file a "motion to dismiss [a] facially defective indictment." (Mem. 23 (alteration added)). Petitioner argues that his Indictment was deficient because it "failed to charge[] actual murder in the first degree or allege[] that a person was dead or killed", was impermissibly vague, and omitted an "essential element" of the crime.   (Mem. 23–25 (alterations added)).   In fact, Petitioner's Indictment is plainly sufficient.

An indictment is sufficient if it "contains the essential facts underlying each element of the offense" and "is specific enough to permit the defendant to use it to protect himself from a subsequent prosecution for the same offense." *United States v. Adams*, 83 F.3d 1371, 1374 (11th Cir. 1996) (citation omitted).   An indictment that tracks statutory language will generally be sufficient unless it omits an element of the crime. *See United States v. Johnson*, 981 F.3d 1171, 1179 (11th Cir. 2020).   "Minor deficiencies [in the indictment] that do not prejudice the defendant" are not grounds to invalidate a conviction. *United States v. Chilcote*, 724 F.2d 1498, 1505 (11th Cir. 1984) (alteration added; citations omitted).

Count 1 charged Petitioner with first-degree murder, and Count 2 charged him with attempted first-degree murder.   (*See* First Composite 272).   Florida law defines first-degree murder as "[t]he unlawful killing of a human being . . . [w]hen perpetrated from a premeditated design to

effect the death of the person killed or any human being[.]"  Fla. Stat. § 782.04(1)(a) (alterations added); *see also Reaves v. Sec'y, Fla. Dep't of Corr.*, 717 F.3d 886, 889 (11th Cir. 2013) ("Under Florida law, first-degree murder requires a 'premeditated design' to kill, which consists of a specific intent to kill coupled with premeditation." (citations omitted)).

Count 1 tracked the statute by listing all the essential elements of first-degree murder, specifically alleging that Petitioner had the premeditated intent to kill the victims and explaining that (as to Count 1) he successfully killed one of the victims by shooting him with a firearm.  (*See* First Composite 272).  Specifically, the Indictment states that Petitioner "did unlawfully from a premeditated design to effect the death of a human being, kill and murder [the victim], a human being, by shooting him[,]" and he attempted to do the same to the second victim in Count 2.  (*Id.* (alterations added)).  These statements are not vague, misleading, or incomplete.

Since the Indictment passes constitutional muster, counsel was not ineffective for failing to request its dismissal.  *See Johnson*, 981 F.3d at 1179.[6]

***Ground Four.***  In Ground Four, Petitioner argues that counsel was ineffective for "misinterpreting" the manslaughter jury instruction to the jury during his closing argument and failing to object to the jury's verdict.  (Mem. 30).  Petitioner contends that defense counsel improperly described second-degree murder as "a crime of passion," when, in fact, it is manslaughter that is the "crime of passion."  (*Id.* 31–32).  Petitioner also states that counsel should have objected to the verdict because there was no evidence presented at trial which would have

---

[6] Petitioner's first Rule 3.800(a) Motion challenged the legality of his Indictment and repeated many of the same arguments he makes in the Petition.  (*See* First Composite 186–99).  The state postconviction court summarily rejected these arguments, finding that the Indictment was "not fatally defective[.]" (Third Composite 231 (alteration added)); *see also Deronville*, 372 So. 3d 264 (affirming denial of first Rule 3.800(a) Motion).  Since the state courts would have clearly rejected the same arguments if counsel had tried to advance them in a motion to dismiss, counsel was not ineffective for failing to present meritless arguments.  *See Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim[.]" (alteration added; citation omitted)).

allowed a reasonable jury to conclude that Petitioner was guilty of first- or second-degree murder. (*See id.* 33–34).

To begin, counsel did not "misinterpret" the jury instruction or confuse the jury into accidentally convicting Petitioner of second-degree murder. A "heat of passion" defense in Florida can be either "(1) a complete defense if the killing occurs by accident and misfortune in the heat of passion, upon any sudden sufficient provocation; or (2) a partial defense, to negate the element of premeditation in first-degree murder or the element of depravity in second-degree murder." *Taylor v. State*, 316 So. 3d 420, 427 (Fla. 1st DCA 2021) (citations omitted). During his closing argument, defense counsel argued that this crime was, at best, "a crime of passion, second degree" because the shooter was "emotional" and "angry" after one of the victims called the shooter the "'N' word." (Notice, Trial Tr. [ECF No. 18-1] 1268–70).[7] Counsel then argued that the conduct alleged in Count 2 was no more than attempted manslaughter because the shooting of the second victim resulted from carelessness and recklessness. (*See id.* 1272–73).

Against this backdrop, Petitioner's primary contention appears to be that counsel erred in suggesting to the jury that Petitioner could still be guilty of second-degree murder even if the "heat of passion" defense applied. (*See* Mem. 32). But a "heat of passion" defense can in fact defeat the premeditation element of first-degree murder without negating the "depraved mind" element of second-degree murder. *See Douglas v. State*, 652 So. 2d 887, 890 (Fla. 4th DCA 1995) (explaining that "a jury can find a defendant who has killed in the heat of passion guilty of *either* second degree murder *or* manslaughter" (emphases added; citation omitted)). Consequently,

---

[7] It bears noting that counsel's primary theory of defense was not that Petitioner had committed second-degree murder or manslaughter instead of first-degree murder based on a "heat of passion" defense. Instead, counsel's primary argument was a misidentification defense premised on the State's unreliable witnesses not proving beyond a reasonable doubt that Petitioner was the shooter at all. (*See generally* Trial Tr. 1274–95). It is clear from reviewing the closing argument in its totality that defense counsel only argued "heat of passion" as an alternate defense if the jury found that Petitioner was indeed the shooter.

counsel did not misstate the law or confuse the jury; on the contrary, the jury was apparently receptive to counsel's argument since it found the State did not prove premeditation and convicted Petitioner of a lesser-included offense.  (*See* Second Composite 100–02).

Moving on, Petitioner argues that counsel should have objected to the jury's verdict.  (*See* Mem. 33–34).  It is unclear on what basis Petitioner would have wanted counsel to object since Petitioner fails to identify any "irregularity in the rendition or reception of [the] verdict[.]"  Fla. R. Crim. P. 3.570 (alterations added).  Petitioner instead seems to argue that there was insufficient evidence for his conviction.  (*See* Mem. 32–34).[8]   This argument is without merit.

Evidence is sufficient under Florida law if, when viewed in the light most favorable to the State, "it allows the jury to infer guilt to the exclusion of any other inferences."  *Leasure v. State*, 105 So. 3d 5, 16 (Fla. 2 DCA 2012) (citation omitted).  Here, the surviving victim testified that "Slim," who the victim identified as Petitioner in court, shot him and the other victim after Petitioner got into a dispute with the other victim.  (*See* Trial Tr. 662–63, 676–86).  This testimony alone, which the Court must take as true under Florida's sufficiency-of-the-evidence standard, is sufficient to prove that Petitioner was the shooter, he acted with a "depraved mind" when he shot the victims, and there was not another reasonable inference justifying acquittal.  *See Bellamy v. State*, 977 So. 2d 682, 683 (Fla. 2 DCA 2008) (explaining that a defendant acts with a "depraved mind" if he or she kills another "out of ill will, hatred, spite, or evil intent"); *Keltner v. State*, 650 So. 2d 1066, 1067 (Fla. 2 DCA 1995) ("[W]e find that the act of pointing a loaded firearm in someone's direction and then firing it is imminently dangerous to another and evinces a depraved mind." (alteration added; citations omitted)).

---

[8] Petitioner's argument that the State failed to prove premeditation (*see* Mem. 32) is irrelevant because the jury did not find Petitioner guilty of first-degree murder (*see* Second Composite 100–02).

Since Petitioner failed to identify an error by counsel, Ground Four does not present a "substantial" ineffective-assistance-of-counsel claim.  *See Hittson*, 759 F.3d at 1272.

***Ground Five.***  In Ground Five, Petitioner argues that counsel erred in the way he handled one of the State's witnesses.  (*See* Mem. 35).  Petitioner states that counsel should have deposed the witness before trial and had he done so, counsel could have filed a meritorious motion to suppress the witness's testimony, his call to 911, and the video surveillance of the shooter's vehicle captured on a home-security system.  (*See id.*).  Petitioner also blames counsel for failing to cross-examine the witness at trial.  (*See id.* 36).  Respondent counters that Petitioner does not explain "how failing to depose [the witness] hindered petitioner's defense in any way."  (Resp. 20 (alteration added)).

The Court agrees with Respondent.  The witness's testimony at trial was extraordinarily limited.  He testified that, at the time of the shooting, he heard "two or three gunshots"; he called 911 to report the gunshots; and his home had surveillance cameras that captured a car speeding away from the scene shortly after he heard the gunshots.  (Trial Tr. 520–26).  Assuming there was a meritorious basis for the witness's testimony or surveillance video to be suppressed, Petitioner wholly fails to explain how he was prejudiced by counsel's alleged failures.

Instead, Petitioner only challenges the usefulness of the witness's testimony and remarks that "had counsel filed a proper motion[,] it would have been suppressed," leading to "a possible acquittal."  (Mem. 36 (alterations added)).  Conclusory allegations are insufficient to establish prejudice under *Strickland*.  *See Price v. Allen*, 679 F.3d 1315, 1325 (11th Cir. 2012).  This is especially true where other eyewitnesses testified that they saw Petitioner driving the same car that was visible on the witness's surveillance footage when the victims were shot.  (*See* Trial. Tr. 670–71, 740, 794–96).  Ground Five is thus meritless on its face.

***Ground Six.*** Next, in Ground Six, Petitioner asserts that counsel should have a filed a motion to correct sentence under Florida Rule of Criminal Procedure 3.800(b). (*See* Mem. 37). Petitioner claims that counsel could have argued that the sentencing court "misapprehended its sentencing discretion" under Florida Statute section 775.087(2)(d) and *Williams v. State*, 186 So. 3d 989 (Fla. 2016), when it imposed consecutive sentences. (*Id.*). He raised a similar argument in his first Rule 3.800(a) Motion, asserting that there was no requirement for him to receive consecutive sentences. (*See* Third Composite 184–85).

This claim is meritless. The state postconviction court soundly rejected Petitioner's argument because "[c]onsecutive minimum sentences are permissible under the plain language of section 775.087(2)(d) if the sentences arise from a single criminal episode." (*Id.* 229 (alteration added; citing *Williams*, 186 So. 3d at 994)). The Court must defer to a state court's interpretation of its state's laws. *See Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997). Moreover, since a state court has already held that Petitioner's "consecutive sentence" argument is meritless, counsel was not ineffective for failing to file a motion that raised the same meritless argument. *See Freeman*, 536 F.3d at 1233.

***Ground Seven.*** In Ground Seven, Petitioner claims that counsel was ineffective when he failed to object to "fundamental error occurring during the sentencing process" — specifically when the prosecutor brought up incidents that occurred after Petitioner was in custody and that the trial court considered during sentencing. (Mem. 38–39 (alterations added)). As with Ground Six, Petitioner raised the substance of this argument in his first Rule 3.800(a) Motion; the state postconviction court found that Petitioner "ha[d] not demonstrated the sentencing court considered constitutionally impermissible sentencing factors when imposing his sentence." (Third Composite 227 (alteration added)). The Court is bound by the state postconviction court's conclusion, and

counsel was not ineffective for failing to object to a supposed error that did not occur. *See Freeman*, 536 F.3d at 1233.

**Ground Eight.**   In Ground Eight, Petitioner alleges that counsel was ineffective "for his failure to object [to] erroneous[] and vague jury instructions." (Mem. 41 (alterations added)). According to Petitioner, the jury instruction for first-degree murder was erroneous because it did not instruct the jury on "the necessary lesser included offense of felony murder." (*Id.*). This claim does not establish deficient performance or prejudice.

As to deficient performance, counsel could not have requested a jury instruction that was not supported by the evidence. *See Ramsubhag v. State*, 937 So. 2d 1192, 1193 (Fla. 4th DCA 2006). The State did not allege that Petitioner committed felony murder, and Petitioner provides no evidence showing that felony murder was a viable, alternative theory of liability. (*See generally* Mem. 40–42). Since the trial court gave the standard jury instruction for first-degree murder, counsel did not perform deficiently for failing to object to it. *See King v. State*, 985 So. 2d 580, 582 (Fla. 5th DCA 2008).

As to prejudice, any failure to object to the first-degree murder jury instruction did not prejudice Petitioner. First, felony murder is not a lesser-included offense of first-degree murder but is instead an alternative method of establishing guilt under Florida law. *See Crain v. State*, 894 So. 2d 59, 73 (Fla. 2004) (holding that first-degree murder can be proven through "either felony murder or premeditation" (citations omitted)). As Respondent notes, the failure to instruct the jury on felony murder benefited Petitioner because felony murder "would have given the jury another way to find petitioner guilty of first-degree murder." (Resp. 24). Further, because Petitioner was not convicted of first-degree murder or attempted first-degree murder, any error in the jury instructions had no effect on the outcome of his case. *See Strickland*, 466 U.S. at 694.

**Ground Nine.**  Finally, in Ground 9, Petitioner asserts that counsel was ineffective because

he failed "to pursue [an] insanity defense and seek [a] sanity evaluation." (Mem. 44 (alterations

added)).  Petitioner explains he was involuntarily committed while awaiting trial at the Palm Beach

County Jail, and his struggles with mental health were discussed and well-documented prior to

trial.  (*See id.* 44–45).[9]  Based on these apparent "mental health issues," Petitioner insists it was

unreasonable for counsel not to seek a competency evaluation and argue that Petitioner was insane

at the time the crimes were committed.  (*See id.* 46–47).  Yet, defense counsel explained "that he

was not pursuing a mental health defense based upon work done early in the case," and he "did

not believe there was a basis to pursue any such defenses in this case."  (Resp. 24 (citations

omitted)).

Although "it simply is not realistic to expect counsel to investigate substantially all

plausible lines of defense[,]" counsel will render ineffective assistance of counsel if he or she

"forgo[es] a plausible line of defense without substantial investigation[.]"  *Gates v. Zant*, 863 F.2d

1492, 1498 (11th Cir. 1989) (alterations added).  Counsel cannot be blamed for failing to advance

an insanity defense unless "a jury would have found . . . that [the defendant] met the insanity

standard at the time of the charged offenses."  *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203,

1211 (11th Cir. 2021) (alterations added).  Under Florida law, a defendant can be found not guilty

by reason of insanity if the defendant proves by clear and convincing evidence that, at the time of

the offense, he had a mental condition that prevented him from either knowing the consequences

of what he was doing or that what he was doing was wrong."  *Id.* (quoting Fla. Stat. §

775.027(1)(b)).  Naturally, if there is no evidence that the defendant would meet Florida's

---

[9] Under Florida's Baker Act, a person can be temporarily committed "for an involuntary mental health
examination" if there is reason to believe that he or she is "a danger to herself or others[.]"  *Khoury v.
Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1121 (11th Cir. 2021) (alteration added; citing Fla. Stat. §
394.463).

definition of insanity, then counsel would not be ineffective for failing to pursue this meritless defense. *See Kight v. Singletary*, 50 F.3d 1539, 1546 (11th Cir. 1995).

Counsel considered an insanity defense but made the reasonable strategic decision not to pursue it. During Petitioner's *Faretta* hearing, the court asked defense counsel if he was "exploring the possibility of a mental health defense in this case[.]" (Notice, *Faretta* Hr'g Tr. [ECF No. 18-3] 30 (alteration added)). In response, counsel explained that, in light of "some evaluations pursuant to competency and an evaluation of the case as a whole[,]" he did not believe he had a reasonable basis to pursue an insanity defense. (*Id.* (alteration added)).

This statement shows that counsel investigated the possibility of raising an insanity defense by reviewing Petitioner's previous mental health evaluations but ultimately concluded it would not be viable. Under these circumstances, the Court cannot (and will not) second-guess counsel's reasonable strategic decision. *See, e.g.*, *Gates*, 863 F.2d at 1498 ("Likewise, if an attorney is aware of a line of defense and makes a conscious decision to reject it, rather than failing to raise it simply because he was unaware it existed, it is more likely that the failure to raise the defense was reasonable."); *Presnell v. Zant*, 959 F.2d 1524, 1533 (11th Cir. 1992) (holding that petitioner "has not come forward with any evidence that would tend to show that trial counsel's decision not to raise an insanity defense was not the result of reasonable professional judgment" (quotation marks omitted)).

Petitioner implies that the failure to rely on an insanity defense was *per se* unreasonable because he was found incompetent to proceed in another criminal case and was not allowed to represent himself following the *Faretta* hearing. (*See* Mem. 45–47). It is significant that "[c]ompetency to stand trial and insanity at the time of the offense involve the defendant's mental state at separate and distinct points in time." *Hayes*, 10 F.4th at 1213 (alteration added; quoting

*Patton v. State*, 784 So. 2d 380, 387 (Fla. 2000)).  In other words, a defendant could have been insane at the time of the crime but competent to stand trial or represent himself and vice-versa. *See id.* (noting that medical competency regarding a petitioner's competency to stand trial "says little" about whether he was insane when the crime was committed).

It also bears noting that Petitioner's competence (or alleged lack thereof) does not support a finding that he was insane at the time of the crimes.  Although Petitioner was found incompetent at one point, it is undisputed that he was successfully restored to competence.  (*See* First Composite 283; *Faretta* Hr'g Tr. 4; Second Composite 35–36, 39).  And, while the trial court did not allow Petitioner to represent himself, it made that decision because it feared Petitioner had "an inability to follow rules" and the potential to "act out violently when he feels disrespected or perceives that others are 'judging him'" — not because Petitioner was unintelligent or unable to understand the gravity of his legal proceedings.  (Second Composite 39); *see also Indiana v. Edwards*, 554 U.S. 164, 175–76 (2008) ("In certain instances an individual may well be able to satisfy [the] mental competence standard, for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel." (alteration added; citations omitted)).

Since there was no reasonable basis for counsel to pursue an insanity defense, Ground Nine does not state a "substantial" ineffective-assistance-of-counsel claim.

\*   \*   \*

In sum, none of Petitioner's unexhausted ineffective-assistance-of-counsel claims is "substantial," and he has thus failed to demonstrate "cause" under the *Martinez v. Ryan* exception. *See Hittson*, 759 F.3d at 1270.  Since Petitioner cannot return to state court to exhaust these claims — and no valid exception to the procedural default rule has been demonstrated — Grounds Three,

Four, Five, Six, Seven, Eight, and Nine are procedurally defaulted and must be dismissed.  *See Brown*, 591 F. Supp. 3d at 1265.

### C.     The Merits

The Court now turns to the merits of Petitioner's properly exhausted claims for relief, Grounds One and Two.  Under AEDPA's standard of review, the Court considers whether the highest state court to adjudicate Grounds One and Two reasonably applied clearly established federal law and reasonably determined the facts considering the evidence before it.  *See Wilson*, 584 U.S. at 124–25.  Because the highest state court to consider these claims — the Fourth DCA — summarily affirmed the lower court in an unreasoned opinion, the Court "look[s] through" the Fourth DCA's opinion to the last "reasoned opinion": the state postconviction court's March 11, 2022 Order denying Petitioner's Final Amended Rule 3.850 Motion.  *See id.* at 125 (alteration added; quotation marks omitted).  Since that Order adopted the State's Response to the Final Amended Rule 3.850 Motion, the Court focuses on the reasonableness of the arguments presented there.  *See Brown*, 591 F. Supp. 3d at 1277–78.

***Ground One.***  In Ground One, Petitioner argues that counsel was ineffective for failing to file a legally meritorious motion to suppress evidence found during the search of Petitioner's mother's home.  (*See* Mem. 2).  Petitioner contends counsel should have argued law enforcement lacked probable cause to search this residence because the affidavits supporting the search warrant were based on unreliable witness testimony — namely "known crack cocaine users and addicts." (*Id.* 3–4).  Petitioner further asserts that, if a motion to suppress had been granted, other inculpatory evidence (such as his cell phone records) would have been suppressed as fruits of the poisonous tree.  (*See id.* 8).  Petitioner concedes counsel filed a motion to suppress requesting similar relief but insists it was barebones and did not specifically address various failures related to the search

warrant application.  (*See id.* 15).

In its Response, the State pointed out that counsel already argued on direct appeal that "the trial court erred in denying the motion to suppress because the witnesses were not credible[,]" but that the Fourth DCA rejected this argument and affirmed.  (First Composite 259–60 (alteration added)).  Further, the State argued that the police had more than enough probable cause to suspect Petitioner "had committed the shootings and that evidence of those crimes would be located at this residence."  (*Id.* 260).  Finally, the State asserted that Petitioner could not have been prejudiced by counsel's failure to file a motion to suppress since "there is no reasonable probability that the absence of items seized from this residence would have changed the outcome of this case."  (*Id.* 262).  The state court reasonably denied this ground for relief.

Although counsel's argument below was not identical to the argument Petitioner presses here, the gravamen of both is the same: that the search warrant affidavit supporting the search did not establish probable cause because the witness testimony supporting it was inherently flawed and unreliable.  (*Compare* Second Composite 46, *and* First Composite 29–30, *with* Mem. 2–8). By affirming the denial of Petitioner's motion to suppress, the Fourth DCA must have held that the search warrant affidavit was sufficient to establish probable cause — even if some of the witnesses were drug users and arguably had dishonest or unreliable reputations.  *See Deronville*, 254 So. 3d at 959; *Wilson*, 584 U.S. at 125–26 (explaining that an appellate court's "unexplained decision" could be based on grounds that "were briefed or argued" before it).  Moreover, since the Fourth DCA rejected a substantially similar argument on direct appeal, it was reasonable for the state postconviction court to find that counsel could not have been ineffective for failing to file a more fleshed out version of a motion that had already been summarily denied.  *See Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 915 (11th Cir. 2009).

CASE NO. 24-80148-CIV-ALTONAGA

It was also reasonable for the state postconviction court to deny this claim on *Strickland*'s prejudice prong.  The only relevant item seized during the search was Petitioner's cell phone.  (*See* Second Composite 67).  Petitioner says this cell phone contained inculpatory information that should have been suppressed because the search of the home was illegal.  (*See* Mem. 8).  But, as Respondent explains, there was not only overwhelming evidence that Petitioner was the shooter, but law enforcement already had a separate search warrant for at least some information related to Petitioner's cell phone.  (*See* First Composite 260–65).  Under these circumstances, the state court reasonably applied federal law when it denied this ineffective-assistance-of-counsel claim.  *See Bates v. Sec'y, Fla. Dep't of Corr.*, 768 F.3d 1278, 1300 n.9 (11th Cir. 2014) ("The overwhelming evidence of [] guilt also makes it obvious that [the petitioner] cannot show *Strickland* prejudice." (alterations added)).  Ground One is denied.

***Ground Two.***  In Ground Two, Petitioner argues that counsel should have filed a motion to suppress the statement he made to law enforcement because a U.S. Marshal "grabbed" Petitioner's groin shortly before the interview commenced.  (*See* Mem. 16).  Petitioner insists that, because the interview took place after a "traumatic incident/assault," the Marshal effectively coerced Petitioner into making inculpatory statements.  (*Id.* 18).  The state postconviction court, adopting the reasoning in the State's Response, found the "allegation [wa]s conclusively refuted by the record."  (First Composite 254 (alteration added)).  It noted that a detective "testified that a physical search including the groin area is standard procedure."  (*Id.* (citation omitted)).  It also found Petitioner was not prejudiced since counsel successfully excluded most of the interview and the small portion the jury heard "contained nothing inculpatory."  (*Id.* 255).

On federal habeas review, the Court must presume that the state court's factual findings are correct unless the Petitioner can prove by clear and convincing evidence that the factual

findings are wrong.  *See* 28 U.S.C. § 2254(e)(1).  Petitioner merely repeats the same accusation against the Marshal in his Petition and does not provide any additional evidence rebutting the state court's findings, let alone clear and convincing evidence.  (*See* Mem. 16–18).  Petitioner cannot reasonably argue that a pat-down search of his groin area prior to an interview rendered his statements involuntary or coerced.  *Cf. United States v. Hidalgo*, 7 F.3d 1566, 1571 (11th Cir. 1993) (holding that suspect was not coerced into consenting to a search even after "SWAT team members . . . broke into his home in the early morning, woke him, and forced him to the ground at gunpoint" (alteration added)).

Petitioner also fails to demonstrate that he was prejudiced by the error he alleges.  He concedes that most of the statements he challenges were suppressed but claims that the statements still prejudiced his defense because they caused him "to appear untruthful" and showed "inconsistent responses in the face of the jury." (Mem. 20).  Yet, Petitioner's defense at trial was that he was not the shooter and that the witnesses misidentified him.  Petitioner's statements were therefore  consistent with his defense at trial because Petitioner told law enforcement that: (1) he was home when the shooting took place; (2) he did not drive the car that the shooter drove; (3) he did not own the cell phone which the victims had contacted prior to the shooting; (4) his nickname was not "Slim"; and (5) he did not know anybody who lived at the scene of the shooting.  (*See* Trial Tr. 1042–53).  The fact the jury believed the other witnesses (and disbelieved Petitioner's defense) is not because counsel failed to file a motion to suppress the rest of the interrogation; it was because the evidence supporting Petitioner's guilt was overwhelming.  *See Bates*, 768 F.3d at 1300 & n.9.  Consequently, the state postconviction court reasonably denied this claim, and Ground Two is denied.

### D.     Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing.  *See Chavez v. Sec'y, Fla. Dep't of Corrs.*, 647 F.3d 1057, 1060 (11th Cir. 2011).  "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (alteration added).  Here, the pertinent facts of the case are fully developed in the record, and the Court can "adequately assess [Petitioner's] claim[s] without further factual development." *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003) (alterations added).  Accordingly, Petitioner is not entitled to an evidentiary hearing.  *See id.*

### E.     Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for a writ of habeas corpus has no absolute entitlement to appeal and must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009).  A certificate of appealability shall issue only if Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, Petitioner must demonstrate that "reasonable jurists" would find the correctness of the district court's rulings "debatable." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Upon consideration of the record, the Court concludes there is no basis to issue a certificate of appealability.

## IV.  CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition Under 28 U.S.C. [section] 2254 for a Writ of Habeas Corpus by a Person in State Custody **[ECF No. 1]** is **DISMISSED** in part on procedural grounds and is **DENIED** in part on the merits, as described above.

CASE NO. 24-80148-CIV-ALTONAGA

2.     A certificate of appealability is **DENIED**.  Because there are no issues with arguable merit, an appeal would not be taken in good faith, and thus, Petitioner is not entitled to appeal *in forma pauperis*.

3.     Final judgment shall be entered by separate order.  The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 13th day of May, 2024.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:    counsel of record;
       Petitioner, *pro se*